UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD E HURTADO, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. 16-cv-07644 |
| v. | ) | |
| | ) | |
| CAVALRY SPV I, LLC, and CAVALRY | ) | |
| PORTFOLIO SERVICES, LLC, | ) | |
| | ) | |
| DEFENDANTS. | ) | Jury Demanded |

## COMPLAINT

Plaintiff, Harold Hurtado, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), the Electronic Funds Transfer Act, 15 U.S.C. §1693, *et seq*. ("EFTA"), and the Illinois Collection Agency Act, 225 ILCS 425, *et seq*. ("ICAA"), and alleges:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1367 for Plaintiff's state law claim(s).

2.      Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

### STANDING

3.      Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4.      Specifically, Plaintiff suffered an economic injury as a result of Defendants' attempt to improperly withdraw funds from her bank account.

5.      Further, Plaintiff suffered a concrete informational injury as a result of Defendants' failure to provide truthful information in connection with its attempt to collect an alleged debt from Plaintiff.

## PARTIES

6.      Harold Hurtado ("Plaintiff'), is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted Springleaf consumer loan account. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA, and a "debtor" as that term is defined in 225 ILCS 425/2 of the ICAA.

7.      Defendant, Cavalry Portfolio Services, LLC ("Cavalry"), is a Delaware limited liability company with its principal place of business at 500 Summit Lake Drive, #400, Valhalla, NY, 10595-1340. It does or transacts business in Illinois. Its registered agent and office are C T Corporation System, 208 South LaSalle St, Suite 814 (Exhibit A, Record from Illinois Secretary of State).

8.      Cavalry is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.      Cavalry holds a collection agency license from the State of Illinois, and is a collection agency as that term is defined in 225 ILCS 425/2 of the ICAA. (Exhibit B, Record from Illinois Department of Financial & Professional Regulation).

10.     Cavalry regularly collects or attempts to collect defaulted consumer debts, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

11.     Defendant Cavalry Portfolio Services, LLC ("CPS"), is a Delaware limited liability company with its principal place of business at 4050 East Cotton Center, Building 2,

Suite 20, Phoenix, Arizona 85040. CPS does or transacts business in Illinois. Its registered agent and office is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60605. (Exhibit C, Record from Illinois Secretary of State).

12.     CPS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts on behalf of Cavalry SPV I, LLC.

13.     CPS holds a collection agency license from the State of Illinois, and is a collection agency as that term is defined in 225 ILCS 425/2 of the ICAA. (Exhibit D, Record from the Illinois Department of Financial & Professional Regulation).

14.     CPS regularly collects or attempts to collect defaulted consumer debts, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

15.     According to Defendant, Plaintiff incurred an alleged debt for goods and services used for personal, family or household purposes, originally for a defaulted Springleaf consumer loan account ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

16.     Due to his financial circumstances, Plaintiff could not pay the alleged debt, and it went into default.

17.     Cavalry purchased the alleged debt sometime thereafter.

18.     Cavalry subsequently assigned the debt to CPS for collection.

19.     On or about October 19, 2015, CPS contacted Plaintiff on his cell phone, and set up a payment plan with him.

20.     The plan included automatic withdrawals from Plaintiff's account as follows:

|            |        |
|------------|--------|
| 10/31/2015 | 210.01 |
| 11/30/2015 | 840.00 |

| | |
|---|---|
| 12/31/2015 | 210.01 |
| 01/31/2016 | 210.01 |
| 02/29/2016 | 210.01 |
| 03/31/2016 | 210.01 |
| 04/30/2016 | 210.01 |
| 05/31/2016 | 210.01 |
| 06/30/2016 | 210.01 |
| 07/31/2016 | 210.01 |

21.     On or about October 22, 2016, CPS mailed Plaintiff a collection letter ("Letter"). (Exhibit E, Payment Plan Letter).

22.     The Letter conveyed information about the alleged debt, including an account number, the identity of the creditor, and an amount due.

23.     Thus, the Letter was a communication as that term is defined at §1692a(2) of the FDCPA.

24.     CPS's Letter memorialized the agreement between Plaintiff and Cavalry, reflecting the payment plan referenced above.

25.     The payments were to consist of electronic fund transfers from Plaintiff's bank account.

26.     The payments were to occur at regular monthly intervals.

27.     Thus, the payments are "preauthorized electronic fund transfers" as that term is defined at 1693a(10) of the EFTA, and are governed by Regulation E of that Act.

28.     The Letter further stated that all agreed upon payments must be received by their due dates, and that failure to satisfy the terms of the payment arrangement would result in the revocation of the agreement, and "reinstatement of the original terms of the account."

29.     At around the same time, CPS mailed Plaintiff another letter reminding him of a payment he authorized for $210.01. (Exhibit F, Payment Reminder Letter).

30.     On or about October 20, 2015, the day after Plaintiff agreed to a payment plan, Cavalry mailed another letter ("Second Letter"). (Exhibit G, Second Payment Letter).

31.     The Second Letter conveyed information about the alleged debt, including an account number, the identity of the creditor, and an amount due.

32.     Thus, the Second Letter was a communication as that term is defined at §1692a(2) of the FDCPA.

33.     The Second Letter informed Plaintiff that Cavalry would be withdrawing a payment of $840 from his bank account on the same day it was going to also withdraw the agreed upon $210.01 payment.

34.     The Second Letter also stated that Plaintiff had authorized the second payment.

35.     Plaintiff never authorized a payment of $840 to be taken on that date, and in fact did not have enough money to make two payments on the same day.

36.     CPS's statement that he had authorized the payment was false.

37.     CPS was aware that its statement was false as it had just on the previous day mailed Plaintiff a letter listing the agreed upon terms of payment plan, which did not include two payments being withdrawn on October 31, 2015.

38.     CPS threatened to take an action that was not legally permitted.

39.     15 U.S.C. § 1692e of the FDCPA provides as follows:

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . .**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

40. CPS threatened to take an action it could not legally take, in violation of 15 U.S.C. 1692e(5), when it threatened to withdraw a second, and unauthorized, payment from Plaintiff.

41. CPS made a false statement, in violation of 15 U.S.C. 1692e(5), when it stated that Plaintiff had authorized the payment.

42. The back of the Second Letter includes a section entitled: "Notice of Important Rights."

43. However, nowhere in that section, or anywhere in the letter, does Cavalry list its Electronic Payment Authorization instructions, which would include instructions regarding Plaintiff's right to cancel pursuant to Regulation E.

44. Regulation E applies to Plaintiff's bank account, as it applies to all consumer bank accounts.

45. Regulation E provides important consumer rights with respect to preauthorized transfers.

46. 12 CFR 205.10(c)(1), states in relevant part:

**Preauthorized transfers**

**(c) Consumer's right to stop payment**

**(1) Notice. A consumer may stop payment of a preauthorized electronic fund transfer from the consumer's account by notifying the financial institution orally or in writing at least three business days before the scheduled date of the transfer. . . .**

47. Plaintiff can cancel an Electronic Payment Authorization orally, or in writing, as long as she does so at least three business days before the scheduled payment.

48. Plaintiff can also cancel such authorization with her own financial institution and does not even need to communicate with CPS to cancel its Electronic Payment Authorization.

49. However, CPS excluded that information from its Second Letter.

50. Plaintiff thought, and the unsophisticated consumer would think, that Cavalry was going to take both payments and that the only way to stop them would be by calling them and convincing them not to take both payments.

51. Plaintiff was afraid to call CPS.

52. It is "notorious" that trying to get through to an 800 number is often a vexing and protracted undertaking, and requiring consumers to call when in fact they could simply contact their own bank to cancel a payment is an invitation to just the sort of coercive tactics in debt collection the FDCPA is designed to prevent. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (holding that requiring a consumer to call a collectors toll free number to find out the amount of the debt owed failed to comply with the FDCPA).

53. By leaving out the Regulation E Electronic Payment Authorization instructions, CPS was in effect making the consumer call in, and speak to a debt collector, before allowing her to cancel an authorized payment (or an unauthorized payment in this case), no doubt to engage in another attempt to collect the alleged debt.

54. CPS's practice, as communicated by it to consumers, has the effect of discouraging consumers from ever cancelling an electronic payment, even unauthorized ones.

55. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.**

> **Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

56.     CPS made a materially false statement, in violation of 15 U.S.C. §§ 1692e and 1692e(10) when it excluded Plaintiff's right to cancel an Electronic Payment Authorization from its collection letter.

57.     15 U.S.C. § 1692f of the FDCPA provides as follows:

> **Unfair practices**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

58.     CPS used unfair means to attempt to collect any debt, in violation of § 1692f, when it excluded instructions to Plaintiff about how he could cancel an Electronic Payment Authorization.

59.     Plaintiff believed he would have to make the two payments and he struggled to ensure there was enough money in the account by foregoing important basic needs.

60.     He was unable to save any money however.

61.     Fortunately, Cavalry did not take the $840 payment as it had threatened to.

62.      On or about October 31, 2015, Cavalry attempted to take the first payment from Plaintiff's bank account.

63.     The payment was returned by Plaintiff's bank, unpaid. (Exhibit G, Payment Return Letter).

64.     According to the payment plan agreed upon between Plaintiff and Cavalry:

> **All agreed upon payments must be received by their due dates. Failure to satisfy the terms of this payment arrangement will result in**

> **the revocation of the discount and reinstatement of the original terms
> of the account.**

(Ex. E, First Letter)

65.     Plaintiff failed to make the first payment by its due date, as he was unable to afford the payment plan CPS persuaded him to accept.

66.     Thus the plan was revoked and Plaintiff again allegedly owed the full amount of the debt.

67.     Cavalry offered to allow Plaintiff to cure the delinquency and re-instate the plan by calling their 800 number directly. (Ex. G, Payment Return Letter).

68.     However, Plaintiff was unable to afford to pay Cavalry and to also provide for basic needs like food and housing, so Plaintiff opted not to re-instate the plan.

69.     In response to Plaintiff's decision, Cavalry decided to attempt to withdraw a payment directly from Plaintiff's bank account.

70.     Cavalry had no authorization to withdraw the payment.

71.     In fact Cavalry had no *written* authorization to withdraw any payments from Plaintiff's account, including the one attempted on October 31, 2016.

72.     The payment failed, and Plaintiff was charged a return check fee by his bank.

73.     Plaintiff became hopeless that Cavalry would ever stop taking his money.

74.     Plaintiff felt anxiety and had difficulty sleeping at the prospect of having to pay Cavalry even when he could not afford to.

75.     He did not realize that all he had to do was ask his bank to stop permitting the payments, because Cavalry did not provide any information to Plaintiff regarding is right to cancel.

76.     15 U.S.C. § 1692f of the FDCPA provides as follows:

**Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

77.     Cavalry used unfair means to attempt to collect any debt, in violation of § 1692f, when it used Plaintiff's bank account information to take money it believed it was owed for an alleged debt without authorization to do so.

78.     Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides as follows:

**Preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made.**

79.     In multiple instances, Cavalry debited Plaintiff's bank account on a recurring basis, in violation of 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), when it debited the account without obtaining a written authorization for preauthorized electronic fund transfers from Plaintiff's account.

80.     225 ILCS 425/9 of the ICAA prohibits the following:

**. . . (24) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.**

81.     Cavalry attempted to enforce a right or remedy it had reason to know did not exist, in violation of 225 ILCS 425/9(24), when it attempted to take payment from Plaintiff's account on an alleged debt without authorization to do so, or without any court order permitting it to do so.

82.     A private right of action exists for violation of the ICAA. *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

83.     In fact, statutes providing for administrative remedies (e.g. the revocation of a license, etc.) imply civil rights of action in Illinois. *Trull v. GC Servs. Ltd. P'ship*, 961 F. Supp. 1199, 1206 (N.D. Ill. 1997).

84.     Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See, Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

85.     Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

86.     CPS threatened to take an action it could not legally take, in violation of 15 U.S.C. 1692e(5), when it threatened to withdraw a second, and unauthorized, payment from Plaintiff.

87.     CPS made a false statement, in violation of 15 U.S.C. 1692e(5), when it stated that Plaintiff had authorized the payment.

88.     CPS made a materially false statement, in violation of 15 U.S.C. §§ 1692e and 1692e(10) when it excluded Plaintiff's right to cancel an Electronic Payment Authorization from its collection letter.

89.     CPS used unfair means to attempt to collect any debt, in violation of § 1692f, when it excluded instructions to Plaintiff about how he could cancel an Electronic Payment Authorization.

90.     Cavalry used unfair means to attempt to collect any debt, in violation of § 1692f, when it used Plaintiff's bank account information to take money it believed it was owed for an alleged debt without authorization to do so.

91.     As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to an award of statutory damages, costs and reasonable attorney fees.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

    A.      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    B.      Statutory damages from Defendant Cavalry pursuant to 15 U.S.C. § 1692k(a)(2);

    C.      Statutory damages from Defendant CPS pursuant to 15 U.S.C. § 1692k(a)(2);

    D.      Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    E.      Such other or further relief as the Court deems proper.

## COUNT II—ELECTRONIC FUNDS TRANSFER ACT

92.    Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

93.    In multiple instances, Cavalry debited Plaintiff's bank account on a recurring basis, in violation of 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), when it debited the account without obtaining a written authorization for preauthorized electronic fund transfers from Plaintiff's account.

WHEREFORE, Plaintiff asks that the Court enter judgment in Plaintiff's favor and against Defendants as follows:

    A.      Actual damages pursuant to 15 U.S.C. § 1692m(a)(1);

    B.      statutory damages from Defendant Cavalry pursuant to Electronic Fund Transfer Act, § 1692m(a)(2);

    C.      statutory damages from Defendant CPS pursuant to Electronic Fund Transfer Act, § 1692m(a)(2);

    D.      costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692m(a)(3); and

    E.      such other or further relief as the Court deems proper.

## COUNT III—ILLINOIS COLLECTION AGENCY ACT

94.    Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

95.    Cavalry attempted to enforce a right or remedy it had reason to know did not exist, in violation of 225 ILCS 425/9(24), when it took payment from Plaintiff's account on an alleged debt without authorization to do so, or without any court order permitting it to do so.

WHEREFORE, Plaintiff asks that the Court enter judgment in Plaintiff's favor and against Defendants as follows:

A.    Compensatory and punitive damages;

B.    costs; and,

C.    such other and further relief as is appropriate.

### JURY DEMAND

Plaintiff demands trial by jury.


By: s/*Celetha Chatman*
One of Plaintiff's Attorneys


Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 502
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com